362 P.2d 744

Adelita G. ORTEGA, Petitioner,

v.

ED HORRELL & SON, (Earl E. Horrell, Administrator of the Estate of Ed Horrell, Deceased, and Earl E. Horrell) Respondent Employer,

and

The Industrial Commission of Arizona, Respondent Insurance Carrier.

No. 7247.

Supreme Court of Arizona.

En Banc.

June 21, 1961.

Shute & Elsing, Phoenix for petitioner.

Donald J. Morgan, Phoenix, for respondent Industrial Commission of Arizona, James D. Lester, Edward E. Davis, C. E. Singer, Jr., and Lorin G. Shelley, Phoenix, of counsel.

## LOCKWOOD, Justice.

Petitioner seeks by certiorari to review the lawfulness of an award of the Industrial Commission of Arizona, respondent herein, denying her any benefits under her Widow's Claim for Compensation. At hearings before the Industrial Commission it appeared petitioner's deceased husband was before his death, the ranch foreman for Ed Horrell & Son, also a respondent herein. It further appeared that on March 12, 1960, petitioner's decedent and his brother-in-law Frank Lavin, who also worked for respondent Horrell, set out for Douglas in a car owned by Lavin's brother. The purpose of the trip was to return two part-time ranch hands to Douglas.

After depositing their passengers in Douglas about midnight, petitioner's decedent and Lavin went across the border to Agua Prieta where they spent some time in a bar, came back across the border and slept in the car. Lavin, the surviving witness, recalls nothing after going to sleep in the car until he found himself in the hospital shortly after the fatal accident, which occurred around noon, Sunday, March 13. Further relevant testimony disclosed that sometime after the accident, blood alcohol tests were taken of the decedent and Lavin and that Lavin had a reading of 0.16, and Ortega, 0.10. There was conflicting evidence as to whether decedent and Lavin attended a rodeo in Douglas on Sunday, March 13. However, since the employer indicated the men were free to spend the time between Saturday night and Monday morning as they pleased, the evidence regarding attendance at the rodeo is irrelevant to the question of whether the accident was employment-connected.

The sole question before this Court is whether decedent and Lavin were engaged in any activity connected with the business of the employer, i. e., in the course of employment, at the time of the fatal accident out of which petitioner's claim arises. Basically, two factors must be considered in resolving the principal question. The first factor relates to the conflicting evidence regarding the route chosen by de-

**372**

cedent and Lavin on their return trip to Globe. The testimony indicated the return route they apparently chose was some 30 miles longer than the route taken on their trip from Globe to Douglas. The employer stated categorically, however, that he did not care which route was taken and would have paid for any mileage turned in. There was further conflicting testimony, sketchy at best, that the longer route was chosen because a portion of the shorter route was under construction. Even if the longer route was taken inadvertently it would not constitute an abandonment of the employment in the face of the employer's testimony that the men could take any route they desired and where the longer route was a reasonable way to get back to Globe. Strangely, there is no evidence whatsoever as to who was driving the car at the time of the accident.

■ The remaining factor concerns the evidence that both men had been drinking sometime prior to the accident, as manifested by the blood alcohol tests performed on both men. This Court has stated that the Compensation Act of this state, A.R.S. § 23-901 et seq. does not make intoxication or careless or negligent acts, a bar to compensation. Simpkins v. State Banking Dept., 45 Ariz. 186, 192, 42 P.2d 47, 49; King v. Alabam's Freight Co., 38 Ariz. 205, 220, 298 P. 634, 639; cf. Sherrill & LaFollette v. Herring, 78 Ariz. 332, 336–337, 279 P.2d 907, 910. In the

King case, the Court held that intoxication would only bar recovery when an " * * employee * * * drinks * * * liquor to such an extent that he can no longer follow his employment * * *" [38 Ariz. 205, 298 P. 639.]

■ The record in the instant case shows that decedent and Lavin had been drinking shortly after midnight on Saturday, March 12. There is also testimony indicating that blood alcohol tests taken 11–12 hours later, shortly after the accident at about noon on Sunday, March 13, revealed a reading of 0.10 for decedent and 0.16 for Lavin. Exhibit A and the testimony relating to it indicate the accident occurred 18 miles west of Douglas. Assuming it took the men an hour to travel the 18-mile distance, they would have left the Douglas area no earlier than 11 a. m. Sunday, March 13th. There is no evidence that they were drinking in the period between 1 a. m. Sunday and the time of the accident at around noon on Sunday. The only evidence is that they were sleeping during the 9–10 hour interval. Moreover, the expert chemist testified that the reading of 0.10 would not have deprived decedent of the ability to recall his employer's instructions and carry them out. The expert further testified that although a reading of 0.16 renders a person an unsafe driver, it would not indicate inability to operate a car. In view of this testimony and because of the lack of certainty regarding sobriety or

lack thereof at the time of the accident, we cannot say that the evidence warranted a conclusion that either man had drunk liquor to such an extent that he could no longer follow his employment.

Award set aside.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and JENNINGS, JJ., concur.